UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JUSTIN A. HINES, on his own behalf and on behalf of a class of those similarly situated,<br>      Plaintiff,<br><br>    v.<br><br>SHERIFF OF WHITE COUNTY INDIANA,<br>      Defendant. | )<br>)<br>)<br>)<br>)   CAUSE NO.: 4:20-CV-43-PPS<br>)<br>)<br>) |

### FINDINGS, REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE PURSUANT TO
### 28 U.S.C. § 636(b)(1)(B) & (C)

This matter is before the Court on a Stipulation to Enter Private Settlement Agreement Following Notice to the Class [DE 88], and a Motion for Award of Attorney Fees and Costs [DE 89], both filed by Plaintiff Justin A. Hines.

On November 18, 2021, District Court Judge Philip P. Simon entered an Order [DE 92] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motions pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

### PROCEDURAL BACKGROUND

On March 31, 2016, Plaintiff Hines filed a complaint alleging that the White County Jail prohibited inmates from receiving newspapers and books through the mail, in violation of the First Amendment to the United States Constitution. Hines further alleged that inmates were not permitted to wear religious jewelry, in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, and Indiana's Religious Freedom Restoration Act ("RFRA"), Ind. Code § 34-13-9-1, *et seq*. Hines sought a declaration that these

polices are unconstitutional; preliminary and permanent injunctions requiring the defendant, the Sheriff of the White County Jail, to allow inmates to receive books and newspapers and wear religious jewelry; individual damages; and attorney fees. On September 9, 2020, Hines withdrew his request for a preliminary injunction, having indicated that the jail was changing its policies to make the requested preliminary injunction unnecessary. [DE 33, 41].

Hines also filed a motion for class certification [DE 4]. While the motion was pending, two cases filed by separate plaintiffs, Andrew Bearden and William Tran, with similar allegations, were consolidated into this case. [DE 53]. On February 19, 2021, Judge Simon granted the motion for class certification, and certified a class pursuant to Federal Rule of Civil Procedure 23(b)(2) consisting of "all persons currently confined, or who will in the future be confined, in the White County Jail." Judge Simon ordered that Hines's individual claim for damages, and his claim regarding religious jewelry, were to be bifurcated from the class claims and resolved upon completion of the class claims. [DE 63].

On October 14, 2021, a settlement in principle was reached to resolve all claims, including the consolidated claims of plaintiffs Bearden and Tran as well as Hines's original claims regarding religious jewelry and seeking individual damages. [*See* DE 81, 82, 83]. On November 12, 2021, class counsel filed the instant motions seeking approval of settlement and payment of attorney fees, and asking the Court to approve the manner of the class notice and set a fairness hearing. [DE 88, 89, 90]. Judge Simon granted the latter motion, approving the notice to the class of the pending settlement, and granted the request for a fairness hearing by referring the corresponding motions to the undersigned. [DE 91, 92].

On February 22, 2022, the undersigned held a fairness hearing. Counsel for the parties appeared by Zoom, but the courtroom was held open, so that any interested individual could attend via Zoom or in person. [DE 95, 96].

## STANDARD OF REVIEW

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). "A district court must scrutinize and evaluate a class action settlement to determine whether it is 'fair, reasonable, and adequate.'" *Bickel v. Sheriff of Whitley Cty.*, No. 1:08-CV-102-TLS, 2015 WL 1402018, at *3 (N.D. Ind. Mar. 26, 2015) (citing *Williams v. Rohm & Haas Pension Plan,* 658 F.3d 629, 634 (7th Cir. 2011) (quoting Fed. R. Civ. P. 23(e)(2))). To evaluate the fairness of a settlement, the court considers five factors:

1. The strength of Plaintiffs' case compared to Defendant's offer;
2. An assessment of the likely complexity, length and expense of the litigation;
3. An evaluation of the amount of opposition to settlement among affected parties;
4. The opinion of competent counsel; and
5. The stage of the proceedings and the amount of discovery completed at the time of settlement.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). The Seventh Circuit Court of Appeals has explained that "[t]he most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Id.* (quotation marks and citation omitted).

## FINDINGS AND RECOMMENDATION

Having considered the instant motions, the Court hereby finds as follows:

1. Appropriate notice of the proposed settlement was given to the class pursuant to Rule 23(e), per the manner and form of class notice approved by Judge Simon on November 17, 2021,

and as confirmed by class counsel in the report of communications from class members filed at Docket Entry 94.

2. On January 16, 2022, Plaintiffs filed a report of communications from the class members. [DE 94]. This report indicated that although counsel received communication from several class members, the only communication relevant to the settlement agreement was from a class member suggesting that, separately from the mailing of books, inmates' families should be permitted to drop off books at the jail. Counsel for the parties indicated that dropping off books was generally permitted, but the practice had been temporarily suspended due to COVID-19. [*See* DE 94, 94-1].

3. Appropriate notice of the settlement was given to the class in the manner and form approved by the Court and as confirmed by class counsel at the fairness hearing. Although the approved notice did not include the date of the fairness hearing, the procedure satisfied the requirements of Rule 23(e) by explaining the proposed settlement and allowing the class members an opportunity to object. No class member objected to the settlement. *See* Fed. R. Civ. P. 23(e)(5); *see also Bardales v. Fontana & Fontana, LLC*, No. CV 19-340-WBV-DMD, 2020 WL 5819873, at *8 (E.D. La. Sept. 30, 2020) (class members who failed to object to proposed settlement were not entitled to participate at fairness hearing).

4. The proposed Settlement Agreement stipulates as follows regarding the Jail's newspaper policy:

   1. The Sheriff stipulates and agrees that he will discontinue his policy prohibiting inmates from having newspaper subscriptions sent to the White County Jail ("the Jail").

2. The Sheriff will permit any inmate of the Jail to subscribe to and receive one newspaper of their choice at their expense.

3. If an inmate of the Jail desires to subscribe at their own expense to a second newspaper, the inmate shall submit a written request for the second newspaper with the Jail Commander or his designee on the kiosk located in each housing unit.

    i. Such a request shall require the inmate to demonstrate that the information contained in the second newspaper is not reasonably available from some other source of news or information that exists in the Jail. In determining whether information is reasonably available from some other source of news or information, the Jail Commander or his designee may consider the cost to the inmate, if any, in procuring that news or information. In an effort to allay some of that cost, the Sheriff has negotiated with his contractor responsible for supplying tablets to inmates that the first five minutes of use a day for each inmate will be free of charge for any app on the tablet that otherwise requires payment.

    ii. In evaluating an inmate's request, the Jail Commander or his designee will then consider whether the inmate has alternative means of exercising the right to access to the information sought (including the cost to the inmate, if any, associated with those alternative means), what alternative options exist for both the inmate and the Jail, and whether a valid rational connection exists between

the regulation restricting a second newspaper subscription and the Sheriff's interests in the regulation.

    iii. Based on the Jail Commander's evaluation, the Jail Commander will create a written decision regarding the inmate's request and will provide this decision to the inmate within seven (7) days of the request. If the Jail Commander determines the inmate should be permitted to subscribe to a second newspaper at his or her own expense, he shall so state in writing. If the Jail Commander determines the inmate should not be permitted to subscribe to a second newspaper at his or her own expense, he shall so state in writing.

    iv. If the inmate disagrees with the Jail Commander's decision, the inmate may appeal to the Sheriff who will conduct his/her own analysis of the same factors to determine whether the inmate should be permitted to subscribe to a second newspaper at his or her own expense. The Sheriff will then issue a written decision regarding the request for a second newspaper within seven (7) days of the inmate's appeal.

5. The proposed Settlement Agreement stipulates as follows regarding the Jail's book policy:

    1. The Sheriff stipulates and agrees that he will discontinue his policy prohibiting inmates from receiving books through the mail when those books are sent directly from publishers, and that inmates will be permitted

to have books delivered to them at the Jail when those books are sent directly from publishers.

2. For purposes of this Agreement, the term "publisher" shall refer to any publisher, book club, store, or distributor that does mail order business or otherwise delivers publications to readers. The term shall include, but is not limited to, Amazon and Barnes & Noble.

3. Nothing in this Agreement shall prevent the Sheriff from inspecting the content of books received through the mail in order to ensure that any such book does not present a threat to a specific legitimate penological interest or from withholding delivery of a book that is deemed to present such a threat. If delivery of a book is withheld pursuant to this provision, the inmate shall be notified in writing of the book's confiscation and may challenge that confiscation through the existing grievance process at the Jail.

4. Nothing in this Agreement shall prevent the Sheriff from continuing to enforce his policy prohibiting inmates from receiving books through the mail when those books are sent from persons or entities other than publishers as defined above.

5. Each inmate of the Jail will be permitted to maintain in his possession up to three books at any one time, although a religious text (such as the Bible or Qu'ran) shall not count toward this limit. The Sheriff will allow an inmate, in the inmate's discretion, to dispose of books in his or her possession by having a friend or family member visit the facility to pick up books, by donating books to the Jail, or by discarding the books in the trash.

6. When an inmate is released or transferred from the Jail, any books in the inmate's possession will be released with the inmate or, if they are not able to be released with the inmate, will be placed in the inmate's property so that the inmate or the inmate's friends or family members may visit the facility to pick up the books at a later date. Books placed in the inmate's property will be maintained by the Jail in that location for a period of sixty days, after which they shall be deemed abandoned and may be discarded or deemed donated to the Jail.

7. Books received or maintained by an inmate shall be considered the property of the inmate unless and until they are discarded, donated, or deemed abandoned as described in paragraphs 5 and 6, above.

6. The proposed Settlement Agreement stipulates as follows regarding the Jail's implementation of the proposed rules:

1. The Sheriff maintains a document titled "Rules, Regulations, Policies, Procedures"—hereinafter, "Jail Rules"—that is distributed to all inmates at the time that they are booked into the Jail and that describes various policies and procedures in effect at the Jail.

2. Within fourteen days of the Court's determination pursuant to Federal Rule 23(e) that this Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit, the Sheriff shall modify the Jail Rules to include the information described in Sections A and B, above, although this information need not be provided verbatim. At the time that the Jail Rules

are modified, the Sheriff or his counsel shall provide a copy of the modified Jail Rules to class counsel.

7. The factors enumerated in *Synfuel Techs., Inc.*, 463 F.3d 646, support approval of the proposed settlement:

    1. The strength of Plaintiffs' case compared to Defendants' offer: Plaintiffs appear to have a strong case. Plaintiffs withdrew their request for a preliminary injunction because the jail abandoned some of the policies that prompted the litigation in the first place, which suggests that the grievances had at least some basis. Regarding books and newspapers, the class appears to be getting much of what Plaintiff Hines was originally asking for; the relief ultimately agreed in the proposed settlement is similar to what Hines originally sought in the individual complaint. [*See* DE 1, 83].

    2. The potential complexity, length, and expense of the litigation: The parties represent that it is in their best interest to resolve the issues addressed in the proposed settlement, to avoid protracted litigation on those issues. If the settlement is approved, the litigation regarding the book and newspaper policies would end and the class would receive the immediate benefit of the new rules discussed in the agreement.

    3. Any opposition to settlement among affected parties: No class member expressed any direct objection to entry of the proposed settlement agreement. Although one class member raised concerns regarding family members' inability to drop off books at the jail, counsel for both parties indicated that this had been temporarily banned due to COVID-19. Upon review of the comment, and based on counsel's representations and the absence of any objection to the proposed settlement

agreement itself, the Court finds that the existing policy for dropping off books does not make this settlement unfair or unreasonable. The settlement strongly promotes the interests identified by the commenter, by ensuring inmates' continued access to books, so long as a particular book does not threaten a legitimate penological interest. Accordingly, this factor supports a determination that the settlement is fair, reasonable, and adequate pursuant to Rule 23.

4. The opinion of competent counsel: Plaintiffs' counsel appears eminently competent and experienced in this area. At the fairness hearing, Plaintiffs' counsel noted that he has been admitted to the bars of the Northern District of Indiana, Southern District of Indiana, and Seventh Circuit Court of Appeals since 2006. He was admitted to the Supreme Court of the United States sometime after that year. He is a senior attorney at the American Civil Liberties Union of Indiana and has served as class counsel in at least two dozen cases in both the Northern and Southern Districts of Indiana. Counsel's approval of this settlement supports a determination that the settlement is fair.

5. The stage of the proceedings and the amount of discovery completed at the time of settlement: This matter was settled after the conclusion of discovery. The close of discovery, along with the withdrawal of Hines's motion for preliminary injunction based on Plaintiffs' satisfaction with policy changes undertaken at the jail, indicates that the parties were able to make some assessment of the merits of Plaintiffs' allegations and negotiate a settlement accordingly. *Bickel*, 2015 WL 1402018 at *5 (the course of the litigation "determines whether the district court and counsel are able to evaluate the merits of plaintiffs' claims, and demonstrates that the parties

have litigated the case in an adversarial manner") (citing Newberg on Class Actions § 13.50 (5th ed.)). Accordingly, this factor supports a determination that the settlement is fair.

8. For the reasons set forth above, the proposed settlement is a fair, reasonable, and adequate resolution to this matter.

9. Further, the agreement comports with the Prison Litigation Reform Act in that it is a "private settlement agreement," and therefore not subject to the limitations on prospective relief for prison conditions outlined in 18 U.S.C. § 3626(a)(1)(A). *See* 18 U.S.C. § 3626(c)(2)(A).

10. Plaintiffs' counsel seeks $10,000.00 in attorneys' fees. The Prison Litigation Reform Act provides that the maximum hourly rate that may be assessed by class counsel is "150 percent of the hourly rate established [by the Criminal Justice Act]." 42 U.S.C. § 1997e(d)(3). Billing at that rate, which is well below their normal billing rates, and subtracting fees already received for the resolution of Hines's individual damages claim, class counsel would be entitled to a maximum of $13,590.07. [*See* DE 90, 90-1 (83.08 attorney hours worked; $6,640.17 already received for individual damages claim)]. Class counsel indicates that this does not account for the work separately done on the individual cases of plaintiffs Bearden and Tran. Ultimately, the parties proposed a compromised amount of $10,000.00. For these reasons described herein, and having reviewed counsel's itemization of fees, the Court finds that the amount sought by counsel is a reasonable award of attorneys' fees in this matter.

Accordingly, the Court **RECOMMENDS** that the District Court:

1. **GRANT** the Stipulation to Enter Private Settlement Agreement [DE 88], and **APPROVE** the Settlement Agreement as a fair, reasonable, and adequate resolution of these proceedings;

2. **ORDER** the parties to carry out the terms of the Settlement Agreement promptly and in good faith, and to promptly file with the Court appropriate papers effecting the dismissal of this action within 14 days, as specified in the Settlement Agreement; and

3. **GRANT** the Motion for Award of Attorney Fees and Costs [DE 89] and **AWARD** attorneys' fees in the amount of $10,000.00 to Plaintiffs' counsel, to be paid as specified in the Settlement Agreement.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 17th day of March, 2022.

        s/ Joshua P. Kolar  
        MAGISTRATE JUDGE JOSHUA P. KOLAR  
        UNITED STATES DISTRICT COURT